IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In re:** | ) |
| | ) |
| **"SCHEDULE A" CASES** | )  2:25-CV-926 |
| | ) |
| | ) |
| | ) |

## "SCHEDULE A" CASE STANDING ORDER

There has been a noticeable uptick in "Schedule A" cases in this District. This has caused the Court to re-examine how it procedurally administers these cases. For the benefit of counsel and the parties in this case, the Court provides the following guidance.

## BACKGROUND

To begin with, as plaintiffs in Schedule A cases are right to point out, counterfeit sales appear to be a serious problem. For companies that hold valuable retail-based trademarks, copyrights, and patents, they risk the dilution of their intellectual property. So there is a need for many IP holders to be able to obtain meaningful relief, oftentimes against online foreign sellers who sell poor knock-offs.

On the other hand, it appears that Schedule A litigation has created a niche of frequent filers and a bar of plaintiff and defense-side attorneys. There is certainly nothing wrong with that. But this has led to gradual and oftentimes bizarre modifications from how normal litigation is conducted—very likely in order to make the litigation more efficient to pursue and resolve for the players.

By way of example, in nearly all of the Schedule A cases, the plaintiff preemptively requests to be excused from the Hague Convention service and translation requirements for foreign service—a request that is almost never even made in other cases against foreign defendants. This is often accompanied by a

request for alternate service by email on defendants, without any attempts at conventional service. In other civil cases, this is rarely requested.

Similarly, there always seems to be an *ex parte* motion for a TRO, seeking to freeze all of the defendants' assets. This type of request is also unheard of in most civil cases. Certainly, in some non-Schedule A IP cases, plaintiffs move for an asset freeze. But this type of remedy isn't ordered *ex parte* and before there is even any evidence that the defendant has sought to move assets; and to grant such relief, there usually has to be discovery and a hearing, so that the asset freeze is narrowly tailored to the amount needed to satisfy a disgorgement award.[1]

Finally, as the Court has noted previously, there has been a distortion as to the rules and laws governing joinder and personal jurisdiction. *See Forcel Media Limited v. DecYi*, No. 25-750, 2025 WL 1665586 (W.D. Pa. June 12, 2025). Joining often hundreds of defendants on a Schedule, particularly in a case involving a number of disparate marks or copyrights, is likely to run afoul of Rule 20. And suing defendants without a sound basis as to their contacts into the forum/personal jurisdiction runs the risk of violating these defendants' due process rights.[2]

In sum, while there are important interests for IP holders at issue in Schedule A cases, many of the modifications to the traditional rules that have developed in this

---

[1] It appears that the reason for the *ex parte* TRO motion in Schedule A cases is to generate settlement leverage, as settlements appear to be reached based on a percentage of the frozen accounts. *See, e.g., Forcel Media Limited v. DecYi et al*, No. 25-750, ECF 10-4 at 5 (image of sellerdefense.cn website, discussing how various law firms determine the settlement amounts).

[2] There are more troubling aspects related to personal jurisdiction in Schedule A cases. Oftentimes, a defendant who might contest personal jurisdiction might not have the incentive to do so, because by the time it appears in the case, there is already a TRO asset freeze.

area of the law are extraordinary exceptions to the normal rules, and appear to have been simply a creature of the economics of the litigation.

## PROCEDURAL GUIDELINES

In light of the above, the Court provides the following procedural guidelines that it intends to employ in Schedule A cases so that the rules and law can be followed.

*First*, to satisfy Rule 20, each complaint shall consist of a single defendant or group of defendants acting under the same operator, and a separate filing fee shall be paid for each separate complaint. This comports with the typical IP case, where an IP holder sues a particular infringer for its specific conduct. If the marks, copyrights, or patents at issue are disparate and unrelated, then the complaints must be divided to include only related IP. One of the important reasons for this severance is that the Court anticipates that personal jurisdiction will be a defendant-specific inquiry, which examines the particular defendant's sales of the allegedly infringing product into the forum state. So joinder may be impractical, at least before personal jurisdiction is established, where "the claims against the defendants involve different facts" relating to personal jurisdiction.[3] *UN4 Prods., Inc. v. Does 1-15*, No. 17-2768, 2017 WL 5885779, at *2 (E.D. Pa. Nov. 29, 2017); *see also Blood v. Fed. Bureau of Prisons*, 351 F. App'x 604, 607 (3d Cir. 2009) (joinder impractical where it would "necessarily require a separate factual inquiry" into each plaintiff's claims). If

---

[3] This concern is amplified by a member of this Court's observation that personal jurisdiction may turn out to be a major issue throughout the litigation of Schedule A cases involving foreign defendants, even if defendants do not appear to contest personal jurisdiction. If a "[p]laintiff were to move for default judgment, the Court would hold an evidentiary hearing or otherwise require [the plaintiff] to develop an appropriate evidentiary record from which the Court could be assured of the validity of its judgment, which includes confirmation of personal jurisdiction." *Xie v. GUANHE Home essentials*, No. 25-265, 2025 WL 1039233, at *3 n.6 (W.D. Pa. Apr. 8, 2025) (Hornak, C.J.).

necessary, for the sake of efficiency, the Court will be open to consolidating related cases once it is satisfied that personal jurisdiction exists and the other consolidation factors are met (*e.g.*, that there is a logical relationship among the parties and the claims).

*Second*, to satisfy Rule 11, the complaint must plausibly plead allegations of personal jurisdiction, including contacts with the forum if specific jurisdiction is invoked.[4] The law is well-settled that simply being an online seller on Amazon isn't enough. And the law is also well-settled that that plaintiff cannot create personal jurisdiction by ordering a product to be shipped to the forum. So before the filing of the complaint, the plaintiff must have developed some evidence of *each* defendant's contacts with the forums, including, if necessary, sales information or distribution locations.[5]

---

[4] This includes any allegations of personal jurisdiction under the federal long-arm statute, Rule 4(k)(2).

[5] In some cases, plaintiffs have complained that this information is not readily available, and that they need some jurisdictional discovery. But that doesn't excuse Rule 11's threshold requirement that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." That said, if a plaintiff meets Rule 11's threshold requirement, the Court will certainly consider allowing jurisdictional discovery, on a case-by-case basis. *See Rockwell Automation, Inc. v. EU Automation, Inc.*, No. 21-1162, 2022 WL 1978726, at *12 (D. Del. June 6, 2022) ("Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous. However, a court should not permit discovery as a matter of course; before allowing jurisdictional discovery to proceed, the court must be satisfied that there is some indication that the particular defendant is amenable to suit in this forum. If a plaintiff does not come forward with some competent evidence that personal jurisdiction over the defendant might exist, a court should not permit jurisdictional discovery to proceed. To receive jurisdictional discovery, plaintiffs must claim that their factual allegations establish with reasonable particularity the possible existence of requisite contacts." (cleaned up)).

*Third*, the Court will not, as a matter of course, allow a plaintiff to dispense with ordinary service requirements, including foreign service requirements under the Hague Convention. There needs to be a particularized showing—which will likely be case specific and defendant specific—before alternate service is authorized. *D Squared Plant Traps LLC v. Guangdong Bixing Trading Co., LTD.*, 716 F. Supp. 3d 352, 357-58 (W.D. Pa. 2024) (Conti, J.) (no showing that the case fell within an exception under the Convention that would authorize an alternative form of service). Any motions for alternate service should explain what efforts have been made to discover each defendant's domicile and to effectuate service by usual means (including what efforts were undertaken to determine the address of each defendant and the validity of the address) and whether the form of alternate service requested is permitted by the Hague Convention given each defendant's domicile (and the factual basis for this). *See RJ Brands, LLC v. Hangdong Trading Ltd.*, No. 21-04747, 2021 WL 3206813, at *3 (D.N.J. July 28, 2021) (rejecting conclusory assertion that compliance with the default method under the Hague Convention is "too time-consuming, costly, and potentially fruitless"); *Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 391 F. Supp. 3d 816 (N.D. Ill. 2019). The Court would also note that to save costs, plaintiffs can always email defendants the waiver-of-service forms, which would obviate the need for Hague Convention service.

*Fourth*, the Court does not intend, as a matter of course, to grant *ex parte* TRO motions. *See Forcel Media Limited*, 2025 WL 1665586.[6] Because "[p]reliminary

---

[6] This is consistent with the undersigned judge's practices and procedures for TROs and preliminary injunctions. *See* Judge Ranjan's Practices and Procedures, Section II(l) ("If a complaint seeks a TRO or preliminary injunction, the Court will typically schedule a telephonic conference as soon as possible. The plaintiff should make all efforts to ensure that the defendant is served and has counsel, as the Court will rarely grant *ex parte* motions."), *available at*:

injunctive relief is an extraordinary remedy and should be granted only in limited circumstances[,]" the Court will not grant TRO and preliminary-injunction motions based on conclusory statements. *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004) (cleaned up).  The Court will not grant any TRO motions where there is not a sound basis that personal jurisdiction exists as to the defendant.  The Court is also unlikely to grant any TRO motion to freeze online accounts absent some evidence that the defendant has transferred or is transferring assets to avoid judgment in the specific case, and also after a specific showing linking the amount of assets to the amount of disgorgement at issue. *See Wham-O Holding v. The Partnerships*, No. 24-12523, ECF 39 (N.D. Ill. Feb. 20, 2025) (declining to impose blanket asset freeze on assets beyond those derived from the sale of allegedly infringing products).  A prejudgment asset restraint—let alone one requested without any notice to the defendant—is an "extraordinary measure" not "to be employed simply to secure a pot of money for later recovery of damages." *Jergenson v. Inhale Int'l Ltd.*, No. 22-2040, 2023 WL 167413, at *5 (N.D. Ill. Jan. 12, 2023).

*Fifth*, because the *ex parte* TRO motion is usually the justification for granting a motion to seal, the Court is unlikely to seal any filings.  If a motion to seal is filed, it must be supported by the grounds set forth in *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 673 (3d Cir. 2019).

*Sixth*, a filing of the complaint must be accompanied by a declaration from plaintiff's counsel that identifies any pending cases brought by the plaintiff(s) against any of the named defendants prior to this suit.  The declaration must identify the case number(s), note whether the intellectual property at issue was the same as in

---

https://www.pawd.uscourts.gov/sites/pawd/files/Ranjan_Practices_Procedures_4_25.pdf

this case, and describe the status and/or disposition of the other case(s) (*e.g.*, pending, settlement, dismissal, or other disposition).

SO ORDERED.

BY THE COURT:

*/s/ J. Nicholas Ranjan*
United States District Judge